whom title was lodged, the property being personalty, were directed to hold one-half of the share of his estate given to the daughter Anna and pay the income to her during her life, and on her death pay over the principal to her issue, and in default of issue then—

"to pay and transfer the said last-mentioned one-half share to such person or persons as my said daughter Anna shall by her last will or instrument in the nature thereof, executed in the presence of at least two witnesses, direct or appoint, and in default of such will or appointment then to pay and transfer the said last-mentioned one-half share to my said daughter Clemence H. Crafts if she shall survive the said Anna, or in case she shall not survive the said Anna then to the issue then living of the said Clemence."

To my mind this language comes far short of an absolute bequest to the daughter Clemence, subject to be defeated by the exercise of the power of appointment given to the daughter Anna. No bequest is made at all, except upon default of appointment. The appointment having been made, it had the effect of passing title. The contingency of failing to exercise the power upon which the title of Clemence depended did not arise, for the power was actually exercised. It having been exercised by the daughter Anna, the title passed through such appointment, and not by virtue of the primary will.

It is no answer, it seems to me, in avoidance of the imposition of a transfer tax, to say that Clemence refuses to recognize title coming to her through the will of her sister Anna. Of course, any legatee can refuse to take a legacy, and thus avoid the transfer tax upon it. This is not what the appellant has done. She has simply said that she does not recognize title to the legacy as coming through the appointment made by her sister, because she gets title through the will of her father. She does not propose to wholly surrender the legacy, and if title in fact does come to her through the appointment made by her sister the legacy is subject to the transfer tax.

I think it does, and that the order of the surrogate was proper, and should be affirmed.

---

(60 Misc. Rep. 130.)

PEOPLE ex rel. SCANLON v. WALKER, County Treasurer, et al.

(Supreme Court, Appellate Division, Fourth Department. October 7, 1908.)

1. INTOXICATING LIQUORS (§ 69*)—LICENSES—GRANT OR REFUSAL OF LICENSE.
    Under Liquor Tax Law (Laws 1896, p. 62, c. 112) § 19, as amended by Laws 1897, p. 222, c. 312, making it the duty of the treasurer to issue a liquor tax certificate if the application therefor is regular in form, and does not show on its face that the applicant is prohibited from trafficking in liquor, the treasurer is concluded by the statements in the application, and the objection which will deprive applicant of a certificate must appear on the face of his application.

    [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 70; Dec. Dig. § 69.*]

2. INTOXICATING LIQUORS (§ 69*)—LICENSES—GRANT OR REFUSAL.
    A statement in an application for a liquor tax certificate that consents had been previously filed with reference to the premises did not make such consents a part of the application and subject to the treasurer's consideration, but under Liquor Tax Law (Laws 1896, p. 62, c. 112) § 19, as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amended by Laws 1897, p. 222, c. 312, the treasurer was concluded by the statement in the application.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 70; Dec. Dig. § 69.*]

Appeal from Livingston County Court.

Application by the people, on the relation of Daniel J. Scanlon, for an order directing Foster W. Walker, county treasurer, and Maynard N. Clement, state commissioner of excise, to issue a liquor tax certificate to relator. Judgment for relator, and defendants appeal. Affirmed.

The following is the opinion of CARTER, County Judge:

The application presented to the treasurer by the relator was correct in form, and upon its face disclosed no reason why the applicant should be prohibited from trafficking in liquor, and, the relator having presented a bond which met the approval of the treasurer and tendered the tax required by law, it at once becomes the duty of the treasurer to prepare and issue the proper liquor tax certificate. Liquor Tax Law (Laws 1896, p. 62, c. 112) § 19, as amended by chapter 312, p. 222, Laws 1897.

It is urged, however, that, inasmuch as the relator had made the statement in his application that an unlimited consent to traffic in liquor had been procured and filed previously with reference to the premises sought to be certificated, it became the duty of treasurer to examine his files and determine the truthfulness of this statement from papers necessarily other than the application before him. I cannot concur in this contention, for it is contrary to the express provision of the statute. Clearly it was not the intention of the Legislature to permit the treasurer to look beyond the application presented, for its letter is, if it "is found to be correct in form, and does not show on the face thereof that the applicant is prohibited from trafficking in liquor," the treasurer shall issue the necessary certificate. Words could hardly make the duty of the treasurer any plainer. The spirit of the lawmaking power is evident. In 1896 the case of People ex rel. Anderson v. Hoag, 11 App. Div. 74, 42 N. Y. Supp. 886, was before the court, and it was there held that the treasurer was not to be concluded by the statements in the application, but in April of the next year the Legislature very promptly declared (chapter 312, p. 222, Laws 1897) that the infirmity which should deprive the applicant of his right to a certificate, provided he furnishes a satisfactory bond and is in readiness to pay the required tax, must appear on the face of his application, but it is strenuously urged that this does appear upon the face of the petition here under consideration, and my attention is directed to that portion of the application reading as follows:

"(15) Have the required consents permitting trafficking in liquors on such premises been obtained and filed heretofore? Yes.

"(16) For what term were such required consents, heretofore filed, given? Unlimited.

"(17) Upon whose application statement, and when were such consents, heretofore obtained, filed? William Scanlon, May, 1907."

And it is insisted that these questions and answers served to open the door and permit the treasurer to enter upon an inquiry among the files in his office. In other words, that the applicant, by declaring that William Scanlon had previously secured and filed the necessary consents, made such consents a part of his application and therefore subject to the treasurer's consideration in connection with the written statement filed by the relator. To this view I cannot yield my assent. The statements stand by themselves, and require no reference to other papers to establish their completeness. They are assertions of what the relator claimed to be existing facts, and the treasurer is not at liberty to challenge the truthfulness of any one of them. He must take these statements as he finds them upon the face of the application presented to him to be true, and, so taking them, determine whether they are correct in form, and show that the applicant is not prohibited from trafficking

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

in liquor; for it must be borne in mind that the treasurer's functions with respect to the issuance of liquor tax certificates are purely ministerial, and, in reaching his determination, he is restricted to what the paper before him discloses. Born v. Hopper, 48 Misc. Rep. 177, 96 N. Y. Supp. 671. To hold otherwise would be adding to the powers expressly granted him by the statute.

If the applicant has made false statements, he has done so at his peril, and must stand the consequences of his acts. He may have misstated some material fact; but, if that be so, it should be determined in some forum, where he can be heard in his own defense, and have his day in court.

The other questions do not appeal to me as of sufficient weight to warrant discussion, and it follows that the relief sought by the relator in this proceeding must be granted, with costs.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles D. Newton, for relator.

Walter H. Knapp and Frank K. Cook, opposed.

PER CURIAM. Order affirmed, with costs, on the opinion of CARTER, J.

---

## LUDWICK v. DAVENPORT–TREACY PIANO CO.

(Supreme Court, Appellate Term. November 24, 1908.)

LIENS (§ 1*)—LIENS ON PERSONALTY—ENFORCEMENT—EVIDENCE.
>    In the absence of evidence that a person receiving from the owner a piano for repairs had authority to deliver the same to a third person, the latter has no right to enforce a lien against the owner.
>    [Ed. Note.—For other cases, see Liens, Dec. Dig. § 1.*]

Action by Margaret Ludwick against the Davenport-Treacy Piano Company. From a judgment of the municipal court in favor of defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEABURY, JJ.

Abraham Oberstein, for appellant.

David J. Wagner, for respondent.

PER CURIAM. There is no direct evidence nor any testimony from which a legitimate inference can be drawn that Cassidy, to whom the plaintiff had delivered her piano for repairs and which is the subject of this action, had any authority to deliver the same to the defendant, without which evidence it would have no right to enforce a lien against the plaintiff. Gluckman v. Kleiman, 3 Misc. Rep. 97, 22 N. Y. Supp. 549.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes